IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| MARIA ELENA OCHOA, SHAINA RICKS, MARY RICKS, and FAIR HOUSING COUNCIL OF SOUTH TEXAS,<br><br>*Plaintiffs*,<br><br>V.<br><br>D.R. HORTON, INC., and CONTINENTAL HOMES OF TEXAS, L.P.,<br><br>*Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ CIVIL ACTION NO. SA-23-cv-01416-FB-RBF<br>§<br>§<br>§<br>§<br>§<br>§ |

**ORDER ACCEPTING REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Before the Court are the Report and Recommendation of United States Magistrate Judge (docket no. 68) concerning Defendants' Motion to Dismiss (docket no. 27), along with written objections filed by Plaintiff Fair Housing Council of South Texas ("Plaintiff" or "FHCST") (docket no. 69), Defendants' response (docket no. 71) to Plaintiff's objections, and Plaintiff's reply (docket no. 72) to Defendants' response.

Where no party has objected to a Magistrate Judge's Report and Recommendation, the Court need not conduct a de novo review of the Report and Recommendation. *See* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings and recommendations to which objection is made."). In such cases, the Court need only review the Report and Recommendation and determine whether it is clearly erroneous or contrary to law. *United States v. Wilson,* 864 F.2d 1219, 1221 (5th Cir.), *cert. denied,* 492 U.S. 918 (1989).

On the other hand, any Report and Recommendation to which objection is made requires de novo review by the Court. Such a review means that the Court will examine the entire record, and will

make an independent assessment of the law. The Court need not, however, conduct a de novo review when the objections are frivolous, conclusive, or general in nature. *Battle v. United States Parole Comm'n,* 834 F.2d 419, 421 (5th Cir. 1987).

The Court has thoroughly analyzed Plaintiff's submissions in light of the entire record. As required by Title 28 U.S.C. § 636(b)(1)(c), the Court has conducted an independent review of the entire record in this cause and has conducted a de novo review with respect to those matters raised by the objections. After due consideration, and for the reasons given in Defendants' briefing and the Report and Recommendation, the Court overrules Plaintiff's objections and accepts the Report and Recommendation as its own order.

Background

As set forth in the Report and Recommendation, Plaintiffs allege Defendants violated the Fair Housing Act (FHA) and the Texas Fair Housing Act (TFHA) by discriminating based on disability in their provision of housing to the public. (Docket no. 35 at 1-2). The live complaint labels Defendant D.R. Horton as the self-identified "largest new homes builder in the Unites States, with construction operations in 33 states, including Texas." *Id*. at 1. The complaint further notes that "D.R. Horton also operates under the name 'Express Homes.'" *Id*. at 7. Defendant Continental Homes of Texas, L.P. is, according to the complaint, "a domestic limited partnership with its headquarters in Fort Worth, Texas"; it "also does business as 'D.R. Horton Homes' and as 'Express Homes.'" *Id*. Plaintiffs Maria Ochoa and Shaina Ricks each separately purchased a house from Defendants or their agents. *Id.* at 10-14. Plaintiffs Mary Ricks (Shaina's mother), the Estate of Vicente Ochoa (represented by Vicente's daughter, Maria Ochoa), and the Fair Housing Council of South Texas did not. *See* (docket no. 35 at 4; docket no. 16 at 1).

Plaintiff Shaina Ricks alleges she purchased her house to live there with her disabled mother, Mary Ricks. (Docket no. 35 at 12-14). Mary suffers from physical disabilities, including arthritis, that limit her mobility. *Id*. at 12. The Rickses sought to purchase a new house that would be constructed to include accessible features, such as a walk-in shower with grab bars and seat, an accessible faucet, and a raised, ADA-compliant toilet. Id. Defendants told the Rickses that the houses on offer could be built only according to a preset floor plan. *Id*. at 13. When the Rickses asked about Defendants potentially modifying the floor plan to make the bathroom accessible, a sales representative told them Defendants could not make any modifications to the floor plan. *Id*. Mary then asked whether Defendants would make the modifications if the Rickses agreed to pay the cost difference. *Id*. Again, the sales representative said no changes could be made by Defendants and that any changes by a third party would need to wait until after initial construction was completed. *Id*. The Rickses renewed these requests once more, and Defendants denied them again. Id. The Rickses did not ask about any additional modification requests they had in mind (e.g., widening doorways or installing ADA-compliant door handles) because after the repeated denials they believed additional requests would be futile. *Id*.

The Rickses allege Mary had (and continues to have) difficulties using the bathroom, which prevented her from showering regularly, caused her physical strain, and exacerbated her physical ailments. *Id*. Mary also has trouble entering, getting around, and exiting the house because her walker doesn't fit through the doorways and the entrance to the home is inaccessible to her. *Id*. at 14. The Rickses further allege that the cost of retroactive modifications is prohibitively high, and for that reason they cannot now make the house accessible for Mary. *Id*. at 13-14.

Similarly, Plaintiff Maria Ochoa alleges she intended to reside in her new house with her disabled father, Vicente Ochoa. *Id*. at 10. But when Maria spoke with a D.R. Horton sales counselor about purchasing a home, the sales counselor told her that all homes available for purchase would be

built according to a preset floor plan. *Id*. at 11. Maria asked about Defendants removing the bathtub so she could later install an accessible walk-in shower to accommodate her father's disability. *Id*. The sales counselor told her she could not make changes to the home during initial construction. *Id*. On Maria's request, the sales counselor referred her to another representative who confirmed that modifications could only be made after she closed on the home—and added that per Defendants' policy she could not close until the completion of the new home's construction. *Id*. Maria alleges that she continued to make modification requests—including for widening of the doorways, so her father's walker and wheelchair could fit through, and installing a ramp. *Id*. The sales counselor at one point measured the walker and acknowledged it would not fit through the doorway, but the counselor nevertheless told Maria that Defendants would not make any modifications during initial construction. *Id*. The counselor also told Maria that the doorway width was standard for Defendants' floor plans, such that none of Defendants' alternative floor plans would have resolved the issue. *Id*.

After construction was completed and Maria Ochoa closed on the home, she paid for extensive retrofitting work—including bathtub removal, piping replacement, demolition of a wall to construct a large walk-in shower, and installation of a ramp—totaling $12,000. *Id*. at 11-12. She alleges the modifications took an additional month, and she and her father could not use the home during that time. *Id*. at 12. But Maria couldn't find a contractor who would agree to change the doorway widths after construction, so the doorways remained too narrow for her father's walker and wheelchair. *Id*. Her father was unable to navigate the home alone, which reduced his ability and willingness to move around. *Id*. Although Maria's father is now deceased, she alleges that her father's quality of life during his final days was significantly diminished by the difficulty he experienced when attempting to leave his bedroom. *Id*.

Mary Ricks shared her experience with Plaintiff, which in 2022 began an investigation into Defendants' policies on accommodating disabled homebuyers. *Id*. at 14-15. When it initiated its investigation, Plaintiff was aware that "D.R. Horton accounts for a large share of the market for new homes in the region and thus has an outsized impact on the availability of accessible homes for people with disabilities in the area FHCST serves." *Id*. at 15.

Plaintiff conducted a disability sales test in the subdivision where the Rickses reside. *Id*. The tester asked a sales representative about adding accessibility features to a home during construction, at the tester's expense, including a roll-in shower, grab bars in the master bathroom, 32-inch-wide doorframes, and accessible routes from the street, garage door, and back patio into the home. *Id*. at 15-16. The sales representative told the tester that no changes could be made. *Id*. at 16. The tester asked if Defendants could make an exception at the tester's expense because her husband had a disability, but the sales representative said "no" and that "any changes would have to be made after closing, which could not be until construction was substantially completed." *Id*. The tester conducted the same test in the subdivision where Ochoa lives and received the same answers. *Id*. at 16-17.

On November 9, 2023, Plaintiffs filed suit in federal court. *See* (docket no. 1). Plaintiffs allege generally that Defendants' refusal to accommodate disabilities, including by allowing for modifications to the homes during construction, at a buyer's expense, violates the FHA and the TFHA. *See generally* (docket no. 35). More specifically, Plaintiffs allege in Count I that Defendants' actions violate the FHA and in Count II that those actions violate the Texas Fair Housing Act. The alleged violations are framed under various theories embodied in the statutory text.

Defendants now seek to dismiss under Rule 12(b)(6), (docket no. 27), certain of Plaintiff FHCST's claims but do not address the claims of any other plaintiff. *See id.* And although the motion purports to seek dismissal of FHCST's entire complaint, the motion addresses only claims premised on

the failure to allow for reasonable modifications to an existing premises. It makes no argument as to FHCST's other claims brought pursuant to other theories of FHA liability (and analogous Texas law). *See generally* (docket no. 27); *see also* (docket no. 35 at 25).

On June 26, 2024, United States Magistrate Judge Richard B. Farrer held a motion hearing at which all parties appeared through counsel of record. (Docket no. 53). Following the hearing, both parties filed supplemental briefs. (Docket nos. 56 & 57).

Magistrate Judge Farrer issued his Report and Recommendation ("R&R" or the "Report") on July 22, 2025. (Docket no. 68). The Report recommends that Defendants' Motion to Dismiss be granted in part and denied in part such that: (1) FHCST's reasonable modification claims under § 3604(f)(3)(A) of the FHA and state law should be dismissed; (2) FHCST's reasonable-accommodation claims under § 3604(f)(3)(B) and analogous state law should remain live and pending; (3) as should FHCST's claims under § 3604(c) and its state law counterpart; and (4) that the claims of all other Plaintiffs also should remain pending unless otherwise dismissed for reasons not addressed in the Report and Recommendation. FHCST objects to the portion of the Report that recommends the dismissal of its reasonable modification claims.

Dismissal Under Rule 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Although a complaint "does not need detailed factual allegations," the "allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations pleaded must show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin K. Eby Const. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quotation marks omitted). A court, however, need not credit conclusory allegations or allegations that merely restate the legal elements of a claim. *Chhim v. University of Tex.*, 836 F.3d 467, 469 (5th Cir. 2016) (citing *Iqbal*, 556 U.S. at 678).

Discussion

In the Report and Recommendation, Magistrate Judge Farrer recommends dismissing FHCST's reasonable modification claims on the ground that the reasonable modification provision applies only to "existing premises" and that single-family homes before the completion of construction do not qualify as such. FHCST objects, making many of the same arguments it made in response to Defendants' motion to dismiss. FHCST contends that, in reaching his conclusion, Magistrate Judge Farrer dismissed the clear language of the FHA and its implementing regulations, interpretations by other courts of the term "premises," and persuasive guidance from the Department of Justice ("DOJ") and United States Department of Housing and Urban Development ("HUD").

Under the plain text of § 3604(f)(3)(A), a seller or landlord unlawfully discriminates by failing to permit reasonable modifications to "existing premises." The FHA does not define "existing premises," "existing" or "premises." 42 U.S.C. § 3601 *et seq*. Without such a definition, Magistrate Judge Farrer could not have ignored the clear language in the FHA in finding that single-family homes before completion do not qualify as "existing premises."

Although Plaintiff disagrees, the neighboring provision in § 3604(f)(3)(C) of the FHA is instructive in ascertaining the meaning of "existing premises" because § 3604(f)(3)(C) provides design-and-construction accessibility requirements that would, if applicable, address Plaintiffs' complaints. However, the statute's plain text limits § 3604(f)(3)(C) to multifamily housing, while the statute is silent on design and construction accessibility requirements for single-family homes. "If §

3604(f)(3)(A) imposed broad requirements for accessibility in the design and construction of any type of dwelling, as FHCST would read the statute, then the entirety of § 3604(f)(3)(C)'s accessibility design-and-construction requirements for only certain multifamily housing would be superfluous." (Docket no. 68 at 9). Stated another way, Plaintiff's reading of § 3604(f)(3)(A) cannot be squared with a neighboring statutory provision.

Moreover, HUD's implementing regulation defines "modification" as "any change to a dwelling unit." 24 C.F.R. § 100.201. The regulation specific to "modifications of existing premises" states that "modifications" include the installation of grab bars in the dwelling unit's bathroom and widening a doorway in the dwelling unit. 24 C.F.R. § 101.203(c). Courts have thus found the term "modification" encompasses "repair or reconstruction." *C.R. v. PLB Mgmt. LLC*, No. 2:21-cv-03275-ODW(JEMx), 2023 WL 2167368, at *5 (C.D. Cal. Feb. 22, 2023); *see also Hobbs v. Goncharko*, No. 25 CV 3398, 2025 WL 2532561, at *6 (N.D. Ill. Sept. 3, 2025); *Weiss v. 2100 Condo. Ass'n,* 941 F. Supp. 2d 1337, 1344–45 (S.D. Fla. 2013). In contrast, FHCST would have the Court apply § 3604(f)(3)(A) to dwelling units still under design or construction. "No court has purported to adopt FHCST's interpretation of § 3604(f)(3)(A). This Court declines to be the first." (Docket no. 68 at 11).

Plaintiff points out that HUD regulations define "premises" as "the interior or exterior spaces, parts, components or elements of a building, including individual dwelling units and the public and common use areas of a building." 24 C.F.R. § 100.201. The Court agrees with Magistrate Judge Farrer that this definition does little to shed meaning of "existing premises" at issue here. Nor is it particularly helpful to note that the plain meaning of the word "premises" could be broad enough to encompass homes under construction, given that as used here "premises" is modified by "existing." *See Magda Hagan of the Family v. Rosales*, 5:22-CV-01065-XR-RBF, 2023 WL 4417302 at *4 (W.D. Tex. May 25, 2023) (referring to "the premises of an unoccupied house under construction").

To support its argument that reasonable modifications are required under the FHA for single-family homes under construction, FHCST cites a 2008 joint statement of DOJ and HUD. *See*

(Docket no. 29 at 7) (citing Joint Statement of the Dep't of Hous. & Urb. Dev. and the Dep't of Just., Reasonable Modifications Under the Fair Housing Act at 15 (March 5, 2008), https://www.hud.gov/sites/documents/reasonable_modifications_mar08.pdf (hereinafter "Joint Statement")). The Joint Statement reads in part:

> If the dwelling unit is . . . a detached single family home . . ., then the purchaser is responsible for the additional costs associated with the structural changes. The purchaser is responsible for any additional cost that the structural changes might create over and above what the original design would have cost. . . .

(Joint Statement at 15). This portion of the Joint Statement addresses who pays for modifications, not whether a refusal to make modifications violates the FHA.

Next, a different portion of the statement addresses a circumstance in which design and construction changes "beyond those already required" for multi-family dwellings under § 3604(f)(3)(C) are sought:

> If a purchaser with a disability needs different or additional features added to a unit under construction or about to be constructed *beyond those already required* by the Act, and it would cost the builder more to provide the requested features, the structural changes would be considered a reasonable modification and the additional costs would have to be borne by the purchaser.

*Id*. (emphasis added). As Magistrate Judge Farrer concluded, "this portion of the [Joint Statement], as it plainly states, applies when modifications are already required; it therefore doesn't purport to answer the present question at issue, which asks whether modifications are required at all." (Docket no. 68 at 10-11).

FHCST next contends the Joint Statement also provides an example scenario that precisely mirrors the situation presented here:

> Example 1: A buyer with a mobility disability is purchasing a single family dwelling under construction and asks for a bathroom sink with a floorless base cabinet with retractable doors that allows the buyer to position his wheelchair under the sink. If the cabinet costs more than the standard vanity cabinet provided by the builder, the buyer is responsible for the additional cost, not the full cost of the requested cabinet. If, however, the alternative cabinet requested by the buyer costs less than or the same as the one normally provided by the builder, and the installation costs are also the same or less,

> then the builder should install the requested cabinet without any additional cost to the buyer.

(Joint Statement at 16). Although the example contains language that taken out of context might assist FHCST's arguments, the Joint Statement as a whole does not purport to address whether reasonable modifications are required under the FHA for single family homes under construction. Instead, the Joint Statement addresses who is responsible for paying for modifications once they are undertaken. Therefore, the Joint Statement does not apply.

Moreover, FHCST concedes that this guidance would warrant at best *Skidmore* deference, *see* (docket no. 56 at n.2), presuming it were on point—which it is not. The Court agrees with the Report that "applying the statement as FHCST requests, to override the FHA's plain text on a topic the statement doesn't purport to address, wouldn't be appropriate." (Docket no. 68 at 11).

Accordingly, the Court concludes that only Plaintiff FHCST's § 3604(f)(3)(A) reasonable-modification claims—whether brought under a theory of disparate treatment or disparate impact—are subject to dismissal. For these and the reasons discussed in Defendants' briefing and the Report and Recommendation, the Court adopts the Report and Recommendation as its own order.

IT IS THEREFORE ORDERED that the Report and Recommendation of the United States Magistrate Judge (docket no. 3) is ACCEPTED pursuant to 28 U.S.C. § 636(b)(1) such that Defendants D.R. Horton, Inc.'s and Continental Homes of Texas, LP's 12(b)(6) Motion to Dismiss the Complaint of Plaintiff Fair Housing Council of South Texas (docket no. 27) is GRANTED in PART and DENIED in PART. Plaintiff Fair Housing Council of South Texas's reasonable modification claims under § 3604(f)(3)(A) of the Fair Housing Act and Texas state law are DISMISSED. Plaintiff Fair Housing Council of South Texas's reasonable-accommodation claims under § 3604(f)(3)(B) and analogous state law, however, remain live and pending, as do claims under § 3604(c) and its state law counterpart. The

claims of all other Plaintiffs also remain pending unless otherwise dismissed for reasons not addressed in this order.

It is so ORDERED.

SIGNED this 24th day of September, 2025.

_____
FRED BIERY
UNITED STATES DISTRICT JUDGE